Filed 11/21/24 R.D. v. Superior Court CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| R.D., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY, <br><br> Respondent; <br><br> SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | 2d Juv. No. B339559 <br> (Super. Ct. No. 24JD00091) <br> (San Luis Obispo County) |

R.D. (Mother) seeks extraordinary writ relief from the juvenile court's order denying family reunification services with her newborn child K.D., and setting a permanent plan hearing

pursuant to Welfare and Institution Code section 366.26.[1]  We conclude that substantial evidence supports the court's findings that reunification services are not in K.D.'s best interests and the court did not abuse its discretion by bypassing services.  (§ 361.5, subd. (b)(10).)  We deny the petition for extraordinary writ.

*FACTUAL AND PROCEDURAL HISTORY*

K.D. was born in May 2024 and detained at birth by the San Luis Obispo County Department of Social Services (DSS) because the infant tested positive for fentanyl.  Mother has three other children, including D.G., who are dependents of the juvenile court.  Mother has not made sufficient progress toward reunification with the three children.  During the 10 months leading to K.D.'s birth, Mother tested positive for various drugs, including opiates, methamphetamine, and marijuana.

Following K.D.'s birth, Mother applied to a residential drug treatment program.  She completed the program assessment and tested negative for drugs in a preliminary drug test.  When she arrived at the facility, however, she tested positive for methamphetamine and Ecstasy.  Mother was actively participating in the residential program in June and July 2024 by attending group meetings, 12-step meetings, anger management, recovery planning, and negative drug testing.

Nearly two years before K.D.'s birth, law enforcement and DSS responded to the home where Mother, G.G. (father of K.D.) (Father), and the three children resided.  Law enforcement found images of child pornography on Father's cell phone and arrested him.  Mother agreed not to permit Father to reside in the home or to be left alone with the children.  She also agreed to participate

---

[1] All statutory references are to the Welfare and Institutions Code.

2

in drug screening. Her later test results were positive, however, for amphetamine, benzodiazepine, and tetrahydrocannabinol (THC).

On May 2, 2023, Father was convicted of possession of child pornography and became a lifetime registered sex offender. Despite probation terms prohibiting Father from being alone with the children, he appeared at the probation department with D.G. Several months later, his probation officer found Father alone in a motel room with D.G. Father stated that Mother left D.G. with him while she worked. The probation officer found a methamphetamine pipe and a bag of marijuana in the motel room. Father admitted to smoking methamphetamine that day and claimed Mother used methamphetamine also. Father's cell phone also contained child pornography and he was arrested again.

*Dependency Proceedings Regarding Sibling D.G.*

On August 24, 2023, DSS filed a dependency petition regarding D.G. pursuant to section 300, subdivision (b) (child at substantial risk of harm due to parents' conduct). The juvenile court held a detention hearing and placed D.G. in the protective custody of DSS.

On November 1, 2023, the juvenile court held a combined jurisdiction and disposition hearing regarding D.G. The court sustained the allegations of the dependency petition, ordered Mother to participate in family reunification services, and ordered D.G. to remain in the custody and care of DSS. The court bypassed reunification services to Father due to his conviction for possession of child pornography and lifetime registration as a sex offender. (§ 361.5, subd. (b)(16).)

The juvenile court held a continued six-month review hearing on May 29, 2024.  The DSS status review report indicated that during the prior six months, Mother had positive drug tests on 10 occasions (October 26, 2023 – March 14, 2024).  This included testing positive throughout her pregnancy with K.D.  Mother also had not participated in mental health assessment and treatment.  DSS recommended that the court terminate reunification services and set a permanent plan hearing for D.G.

The juvenile court found that return of D.G. to Mother's custody would create a substantial risk of detriment to D.G.'s physical or emotional well-being.  (§ 366.21, subd. (e)(1).)  The court also found by clear and convincing evidence that DSS had provided reasonable reunification services and that Mother did not participate regularly and make substantive progress in her services plan.  (*Id.*, subd. (e)(3).)  The court then set a permanent plan hearing for September 19, 2024.  Mother sought an extraordinary writ directing the juvenile court to vacate its orders terminating reunification services and setting a permanent plan hearing for D.G.  We denied her petition for an extraordinary writ.  (*R.D. v. Superior Court of San Luis Obispo County* (B338134, Sept. 17, 2024) [nonpub opn.].)

*Present Proceedings Regarding K.D.*

On May 7, 2024, DSS filed a dependency petition regarding K.D. pursuant to section 300, subdivisions (b), (g), and (j).  Among other allegations, DSS alleged that K.D. was at risk of serious harm because the infant tested positive for fentanyl at birth; Mother's other children were involved in current dependency proceedings; Mother had used illegal drugs during her pregnancy; and Mother allowed her children to be in the care of Father, a

4

registered sex offender. DSS alleged that Father was incarcerated and a lifetime registered sex offender prohibited from contact with any child.

The juvenile court detained K.D. and placed her in DSS custody. Mother received supervised visitation twice weekly.

On July 22 and 24, 2024, the juvenile court held a contested combined jurisdiction and disposition hearing. DSS recommended that Mother not receive family reunification services because she had not made sufficient progress in reunifying with K.D.'s sibling and half-siblings. (§ 361.5, subd. (b)(10).) DSS also recommended that Father not receive family reunifications services due to his lifetime sex offender registration. (*Id.*, subd. (b)(16).)

The juvenile court received evidence of DSS reports and testimony from Mother and the DSS social worker. Mother had frequent pleasant and caring visits with K.D. in person and through Zoom. Mother testified that she had been in residential drug treatment for 48 days and believed she had made progress in her sobriety. She also stated that K.D. recognized her during visits and that she fed and cared for the infant. Mother explained her positive hospital drug tests were due to prescribed pain medication. She also testified that positive alcohol tests during her pregnancy were due to cold medication and she denied knowingly using the drug Ecstasy.

The juvenile court sustained the allegations of an amended dependency petition, made removal findings and orders, and bypassed reunification services to Mother and Father. The court praised Mother for her sobriety thus far but found that she minimized her past drug problems and had not taken reasonable steps to prevent removal of K.D.'s siblings and half-siblings ("So

5

the Mother's testimony indicated that she still struggles with some of the requirements for successful treatment, as some of her answers regarding her past use were not credible, [as] were those that minimized some of her past issues"). The court also concluded by clear and convincing evidence that provision of reunification services would not be in K.D.'s best interests. The court then set a permanent plan hearing.

Mother has filed a petition for extraordinary writ challenging the decision.

## DISCUSSION

Mother argues that the juvenile court abused its discretion by bypassing reunification services to her because the ruling is not in the best interest of K.D.

We review the juvenile court's findings concerning jurisdiction for substantial evidence. (*In re F.V.* (2024) 100 Cal.App.5th 219, 227; *In re J.H.* (2018) 20 Cal.App.5th 530, 535 ["We resolve all conflicts in favor of the court's determinations, and indulge all legitimate inferences to uphold its findings"].) We examine the entire record in a light most favorable to the trial court's findings to determine whether substantial evidence supports those findings, recognizing the clear and convincing evidence standard of proof. (§ 366.21, subd. (e); *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005; *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121-1122 [order denying reunification services].) We review the court's ruling regarding a child's best interests for an abuse of discretion. (*In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1273.)

Sufficient evidence supports the juvenile court's findings. Mother's reunification services had been terminated for K.D.'s sibling D.G. and Mother made little progress in addressing her

addiction before K.D.' birth.  Mother used drugs throughout her pregnancy with K.D.  Following K.D.'s birth, Mother either had positive drug tests or failed to test during May, 2024.  She also had a positive drug test for methamphetamine when she entered residential treatment.  At the time of the July 2024 combined jurisdiction and disposition hearing, Mother had been in residential treatment for only 48 days.  Following the hearing, the court found that Mother minimized her drug problems and certain of her testimony was not credible.

Here the juvenile court found that provision of reunification services would not be in K.D.'s best interests.  K.D. was removed from Mother's care at birth and had never lived with Mother.  At the time of the jurisdiction and disposition hearing, K.D. was three months old and lived her entire life in foster care.  Mother made insufficient progress in addressing the drug addiction problems that led to the removal of her other three children and, as the court found, minimized her drug addiction.  The court did not abuse its discretion by denying reunification services pursuant to section 361.5, subdivision (b)(10).

## DISPOSITION

We deny the petition for extraordinary writ.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.                    CODY, J.

7

Gayle L. Peron, Judge

Superior Court County of San Luis Obispo

_____

R.D., in pro. per., for Plaintiff and Appellant.
No appearance for Respondent.
Rita L. Neal, County Counsel, and Vincent M. Uberti,
Deputy County Counsel, for Real Party in Interest.